IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES, ex rel.,
MULTI-FAMILY DRYWALL, INC.,
a Louisiana corporation,

       Plaintiff,

vs.                                                   Civ. No. 96-1554 LCS

ACTUS CORPORATION/SUNDT
CORPORATION, a joint venture of ACTUS
CORPORATION, a California corporation, and
SUNDT CORPORATION, an Arizona corporation,
et al.,

       Defendants/Third-Party Plaintiffs,

vs.

DENNY & SONS PAINTING, a New Mexico
partnership, et al.,

       Third-Party Defendants.

**<u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>**

Findings of Fact

The uncontroverted facts stated in the Pretrial Order are hereby adopted by reference.  In

addition thereto, the Court makes the following findings of fact.

1.  Pursuant to its subcontract with the Defendants/Third-Party Plaintiffs (Actus), the

Plaintiff (Multi-Family) was required to install drywalls in 76 housing units at Holloman Air Force

Base, New Mexico.

2.   The drywalls were to be suitable for application of paint by the Third-Party Defendant (Denny & Sons).

3.   Multi-Family failed to properly apply the "mud" to the drywalls thus causing a problem with paint "shadowing" or "flashing."

4.   Multi-Family also left minor drywall defects.

5.   On April 19, 1996, Actus eventually accepted Multi-Family's work.

6.   Multi-Family, Actus, and Denny & Sons entered into an agreement on June 19, 1998 whereby they agreed that Denny & Sons would complete repair and touch up of minor drywall defects and caulk the bottom of door jambs.   Multi-Family and Actus would split the cost of this additional work by Denny & Sons.

7.   That agreement resulted in Change Order No. 1 to Multi-Family's subcontract. Change Order No. 1 was the only change order issued with respect to the Multi-Family subcontract.

8.   It was the intent of the parties that Change Order No. 1 resolve the extra costs associated with the defective drywalls problem.

9.   Multi-Family made no further attempts to perform under the subcontract after the execution of Change Order No. 1.

10.  Actus never gave Multi-Family any notice to cure defects as provided in the subcontract under §10.1.1.

11.  On August 28, 1996, Actus accountant Tracey Chaykin mailed to Multi-Family "the necessary forms for final payment for the Holloman AFB project."

12.  The letter made no mention of any problems that needed to be corrected prior to the final payment.

13.  Actus withheld from Multi-Family $21,217.20, the balance of the subcontract.

14.  Denny & Sons Painting was a New Mexico partnership between John Bouma and John Denny.

15.  On January 22, 1998, John Denny released his interest in Denny & Sons to John Bouma.

16.  Because the defective drywalls caused Denny & Sons to incur extra costs in painting the walls, Denny & Sons made several claims against Multi-Family for back charges.

17.  It was reasonable for Denny & Sons to go to Jack Cassity, the Actus project manager, with its post-June 19, 1996 complaints about the drywalls.

18.  Mr. Cassity informed Denny & Sons to submit its post-June 19, 1996 extra costs for consideration by Actus.

19.  Mr. Cassity did not give Denny & Sons a "blank check" for those extra costs.

20.  The subcontract between Actus and Denny & Sons requires that any modifications to the subcontract be reflected in a written change order as described in §6.1.

21.  The June 19, 1996 letter reflected the intention of the parties to resolve any claims by Denny & Sons for the extra work resulting from Multi-Family's defective work.

22.  Denny & Sons did not receive a change order for extra work performed subsequent to the June 19, 1996 agreement.

23.  Denny & Sons performed its obligations under the subcontract.

24.  On November 18, 1996, Denny & Sons released its claims against Multi-Family.

3

25.  Actus withheld from Denny & Sons $20,384.21, the balance of their subcontract.

26.  On July 1, 1996 Actus wrote to Denny & Sons informing it that additional workmen would be hired at the expense of Denny & Sons to finish its job.

27.  Actus did not obtain a written change order for the additional workmen hired to help Denny & Sons.

28.  The July 1, 1996 letter also does not indicate that Denny & Sons was entitled to cure defects as required under §10.1.1 of the subcontract.

29.  Denny & Sons did not receive the July 1, 1996 letter until after the additional workmen (Louie Carbajal doing business as L & L Painting) arrived at the job site.

Conclusions of Law

1.  Multi-Family breached its subcontract with Actus by providing defective drywalls unsuitable for painting.

2.  The issue then becomes whether there was an accord and satisfaction of the Multi-Family subcontract.  Discharge of an existing contractual obligation or settlement of a cause of action by an accord and satisfaction means (1) substituting an agreement (accord) for the obligation or cause of action, and (2) performing the substituted agreement (satisfaction). **National Old Line Ins. Co. v. Brown**, 107 N.M. 482, 484, 760 P.2d 775, 777 (1988).  An accord also requires offer and acceptance.  **Id**.  "An accord and satisfaction must be accompanied by such acts or declarations as amount to a condition that if money is accepted, it is to be in full satisfaction;  and the acts or declarations must be of such character that the party to whom the money is offered is bound to understand that, if he accepts the money, he accepts it subject to such conditions." **Gutierrez v. Sundancer Indian Jewelry, Inc.**, 117 N.M. 41, 44, 868 P.2d

4

1266, 1269 (Ct. App. 1993), **cert. denied,** 117 N.M. 121, 869 P.2d 820 (1994).  The burden of

proof in showing an accord and satisfaction is with the party raising it.  **Kimberly, Inc. v. Hays**,

88 N.M. 140, 143, 537 P.2d 1402, 1405 (1975).

      3.  The evidence showed that Actus accepted the drywalls; the drywall problem was

resolved by the July 19, 1996 agreement and ensuing Change Order No. 1 under the subcontract;

Actus never gave notice to cure under the subcontract; and the Actus accountant was ready to

issue a final payment without mention of any sort of remaining drywall problem.  This conduct

amounted to a substituted agreement that by paying Denny & Sons to complete the repairs left by

Multi-Family, Multi-Family completed its obligations.  Actus' conduct also indicates that it

accepted this arrangement.  Actus is also estopped from claiming this was not the agreement.

Multi-Family carried its burden of proof with respect to the accord and satisfaction issue.

      4.  Therefore, Multi-Family is entitled to a judgment and award against Actus and

Fireman's Fund, jointly and severally, for the remaining balance of its subcontract in the amount

of $21,217.20.

      5.  Under N.M.S.A. §56-8-4, "[t]he court in its discretion may allow [prejudgment]

interest up to ten percent from the date the complaint is served...."  Moreover, where money is

due by a contract"[t]he rate of interest, in the absence of a written contract fixing a different rate,

shall not be more than fifteen percent annually...."  N.M.S.A. §56-8-3.  Since Multi-Family cannot

be said to have "clean hands" in this matter, i.e, it breached the original subcontract, equity

demands that it be awarded  prejudgment interest of 0%.

      6.  Because Multi-Family did not fulfill its obligations under the original subcontract,

equitable considerations also persuade me that Multi-Family is not entitled to attorney's fees and

costs.

7.  With regard to Denny & Sons, the issue is whether it substantially performed its subcontract.  Basically, substantial performance occurs when there is good faith performance or a technical breach without damage.  **See Shaeffer v. Kelton**, 95 N.M. 182, 186, 619 P.2d 1226, 130 (1980) and **Viking Communities Corp. v. Peeler Constr. Co.**, 367 So.2d 737, 739 (Fla. App. 4 Dist. 1979) both cited in **Hasse Contracting Company, Inc. v. KBK Financial, Inc.**, ___ P.2d ___ (N.M. Ct. App. 1997).  The evidence shows that Denny & Sons acted in good faith by repeatedly trying to correct the paint "shadowing" or "flashing."  These problems were eventually accepted by Actus, so any damage to Actus was nil.  Consequently, Denny & Sons substantially performed its subcontract with Actus.

8.  Denny & Sons, however, failed to obtain a change order for work performed after the June 19, 1996 agreement and so waived any claims for those additional costs incurred subsequent to June 19, 1996.  Denny & Sons did not orally or otherwise modify the subcontract to include these costs, because Mr. Cassity only agreed to consider those costs.  **See Medina v. Sunstate Realty, Inc.**, 119 N.M. 136, 138, 889 P.2d 171, 173 (1995)(parties to a written contract may modify that contract by express or implied agreement as shown by their words and conduct even if the contract requires that modifications be made in writing); **Board of Education, Gadsden Independent School Dist. No. 16 v. James Hamilton Constr. Co.**, 119 N.M. 415, 421-22, 891 P.2d 556, 562-63 (Ct. App. 1994), **cert. denied**, 119 N.M. 354, 890 P.2d 807 (1995)("[w]here the contract requires that any modification be in writing, oral modifications are ineffectual").

9.  Denny & Sons is therefore entitled to a judgment and award against Actus and Fireman's Fund for the remaining balance under its subcontract of $20,384.21 plus a reasonable

prejudgment interest rate of 5.5% to be calculated beginning January 16, 1997, the date Actus

filed the third-party complaint and presumably served it on Denny & Sons.[1]

     10.  Because Denny & Sons acted in good faith in this matter, it is also entitled to

reasonable attorney's fees and costs.

     11.  With respect to Actus, the issues that arise are those of waiver and estoppel.  "It is an

established rule that the waiver of an express contractual condition may be implied in the conduct

of the parties. [Citation omitted].  Where an expression of waiver is followed by a substantial and

detrimental change in the position of the other party to the contract, a court is amply justified in

applying the doctrine of estoppel. [Citation omitted]."  **Shaeffer**, 95 N.M. 182, 186, 619 P.2d

1226, 1230 (1980).  Equitable estoppel "'is the preclusion, by acts or conduct, from asserting a

right which might otherwise have existed, to the detriment and prejudice of another, who in

reliance on such acts and conduct, has acted thereon.'"  **Moss Theatres**, **Moss Theatres, Inc. v.**

**Turner**, 94 N.M. 742, 744, 616 P.2d 1127, 1128 (Ct. App. 1980) (quoting **Reinhart v.**

**Rauscher Pierce Securities Corp.**, 83 N.M. 194, 490 P.2d 240 (Ct. App. 1971)).

     12.  The burden of proof is on the party asserting the waiver.  **Kimberly, Inc. v. Hays**, 88

N.M. 140, 143, 537 P.2d 1402, 1405 (1975).  "'A waiver is the intentional relinquishment of a

known right or such conduct as warrants an inference of the relinquishment of such right and may

result from an express agreement or be inferred from circumstances indicating an intention to

waive.'"  **Moss Theatres, Inc. v. Turner**, 94 N.M. at 744, 616 P.2d at 1128 (quoting

**Bastanchury v. Times-Mirror Co.**, 68 Cal. App.2d 217, 156 P.2d 488 (1945)). The existence of

---

[1]No certificate of service is in the court file or noted on the docket sheet.

waiver is a factual issue which must be determined under the facts of each case. **Peoples State Bank v. Ohio Cas. Ins. Co.**, 96 N.M. 751, 752, 635 P.2d 306, 307 (1981).

13. The evidence in this case shows that Actus failed to obtain a written change order reflecting its claims against Multi-Family and failed to provide Multi-Family with any notice to cure defects. These inactions caused Multi-Family to leave the job site thinking that it had completed its work for Actus. Moreover, Multi-Family received a letter from an Actus accountant which indicated that the final payment on the subcontract would be forthcoming once Multi-Family completed some paper work. Actus cannot now complain that Multi-Family abandoned the job site and owes Actus money. Multi-Family has carried its burden of showing that Actus waived and estopped its claims against Multi-Family.

14. The evidence indicates that with respect to Denny & Sons, Actus failed to obtain a written change order reflecting its claims against Denny & Sons and providing an insufficient as well as untimely notice to cure defects in its July 1, 1996 letter to Denny & Sons. Again, these inactions on the part of Actus caused Denny & Sons to continue working and incurring extra costs beyond the subcontract amount to complete their subcontract. Denny & Sons has carried its burden of showing that Actus waived and estopped its claims against Denny & Sons.

15. Actus is, therefore, entitled to no award or judgment as against Multi-Family or Denny & Sons.

A Judgment consistent with these Findings of Fact and Conclusions of Law will be filed concurrently.

_____
Leslie C. Smith
UNITED STATES MAGISTRATE JUDGE
(presiding judge by consent of the parties)

9